UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

SCOTT CLAPPER,

                                Petitioner,

   -against-                                         9:18-CV-0102 (LEK)

BRUCE YELICH,

                                Respondent.

_____

## DECISION AND ORDER

**I.    INTRODUCTION**

On January 24, 2018, Petitioner Scott Clapper filed a 28 U.S.C. § 2254 petition seeking a writ of habeas corpus. Dkt. No. 1 ("Petition"). Petitioner also sought, and was granted, leave to proceed in this action in forma pauperis ("IFP"). Dkt. Nos. 3 ("IFP Application"), 4 ("IFP Order"). Having reviewed the merits of Petitioner's request for relief, the Court now finds that the Petition should be denied and this action dismissed.

**II.    BACKGROUND**

    **A.  Factual Background**

The facts set forth below were drawn primarily from Petitioner's state court records, Dkt. No. 15-1 ("SCR"), which were submitted by Respondent along with an opposition and answer, Dkt. Nos. 13 ("Opposition"), 14 ("Answer"). They primarily describe the criminal proceedings that occurred after Petitioner was indicted in both Schoharie County and Schenectady County on charges related to "a string of burglaries" that occurred in 2012. People v. Clapper, 20 N.Y.S.3d 452, 453 (N.Y. App. Div. 2015) ("Clapper I").

*1. Guilty Plea*

On October 16, 2013, Petitioner appeared with counsel in Schenectady Supreme Court, where he pled guilty—pursuant to a plea agreement—to one count of third degree burglary in full satisfaction of the pending three-count indictment. SCR at 22. The plea agreement provided that Petitioner would serve "a sentence of one-to-three [years] consecutive to the [Petitioner's] plea that he entered in Schoharie County." Id. at 5–6. Petitioner's counsel represented at the hearing that Petitioner had previously pled guilty to two criminal charges in Schoharie County, but had not yet been sentenced. SCR at 5–7. Petitioner expected to serve "a determinate sentence of three and a half years . . . [a]nd an indeterminate sentence of two to six years" on the Schoharie County charges, with those sentences "to run consecutively . . . [w]ith each other." Id. at 7.

Petitioner's counsel also told the Schenectady Supreme Court judge that she "repeatedly requested a concurrent offer" while negotiating Petitioner's plea agreement with the District Attorney's Office, but "was told that . . . since a concurrent offer was previously rejected [by Petitioner], it would no l[onger] be available." Id. at 8–9. The offer of a concurrent plea had apparently been offered, and rejected, while Petitioner was represented by different counsel. Id. at 9. Petitioner's hearing counsel confirmed that Petitioner "underst[ood] that [a concurrent sentence wa]s not going to be the case," and was nonetheless "willing to accept the offer . . . extended." Id.

Later, during the plea colloquy, Petitioner indicated that he (1) was not under the influence of any drugs or alcohol which would impair his understanding and comprehension; (2) had adequate time and occasion to consult with his attorney about what was in his best interests; (3) was satisfied with the representation and counsel he had received; (4) understood

the terms of the plea; (5) had not been made any promises or representations in connection with the plea (other than those previously placed on the record); and (6) did not have any questions about the plea. Id. at 11–22. Petitioner also signed a written waiver of appeal. Id. at 17.

### 2. Sentencing

Petitioner's sentencing hearing was held in Schenectady Supreme Court on December 9, 2013. Id. at 26. In accordance with the terms of his plea agreement, Petitioner was sentenced to "one to three years of an indeterminate sentence, to run consecutive to his terms of incarceration off of two convictions in Schoharie County." Id. at 42–43.

However, Petitioner's Schoharie County sentencing actually occurred after his Schenectady sentencing, on January 8, 2014. Id. at 195–98. Petitioner was sentenced on the Schoharie County charges to one determinate sentence of forty-two months, to run consecutively with a second indeterminate sentence of two to six years. Id. at 196–97. No mention was made of Petitioner's Schenectady sentence during the Schoharie sentencing hearing, and the Schoharie County Court judge did not indicate whether the Schoharie and Schenectady sentences would run concurrent or consecutive to one another. Id.

### 3. Petitioner's First Direct Appeal

On December 13, 2013, Petitioner filed a direct appeal of his Schenectady sentence with the Appellate Division, Third Department. Id. at 56. In connection with that appeal, Petitioner submitted a counseled brief, an appendix, and a pro se supplemental brief. Id. at 46–124. In the counseled brief, Petitioner primarily contended that by imposing a sentence of imprisonment that ran consecutively with a contemplated, but not yet imposed, sentence of imprisonment from another court, the Schenectady County Court had violated New York Penal Law § 70.25(1)(a).

3

Id. at 52–54. Petitioner also argued that his "challenge to the legality of his sentence [wa]s not barred by his waiver of appeal." Id. at 52.

In Petitioner's pro se supplemental brief, he further argued that his former counsel—the attorney that represented Petitioner when he rejected the District Attorney's settlement offer—was ineffective because (1) he did not appropriately educate Petitioner on the advantages of accepting a concurrent plea deal, id. at 120–21; (2) he did not meet with Petitioner frequently enough to satisfactorily apprise him of his legal options and best interests, id. at 121; (3) he misinformed Petitioner that he would be eligible for the "Shock Incarceration Program," which would shorten the length of Petitioner's incarceration, id. at 119–20; (4) he frequently played golf with the presiding judge and was "extremely close to the Judge and the District Attorney," resulting in a conflict of interest, id. at 121–22; and (5) he did not request a change of venue and did nothing when Petitioner reported that his girlfriend had been coerced into making an involuntary statement to police, id. at 122.

The People filed opposition papers accepting "that the court was without the authority to impose a sentence to run consecutively with the sentence in Schoharie County, because the latter had not yet been imposed." Id. at 142. Nonetheless, the People contended that no adjustment to Petitioner's sentencing was required, because the Schoharie County Court judge's failure to "address whether [Petitioner's] sentence would run consecutively or concurrently" meant that "it r[an] consecutively as a matter of law." Id. at 143 (citing N.Y. Penal Law § 70.25(4)).

On November 19, 2015, the Third Department held as follows:

> As [Petitioner] argues, and the People concede, Supreme Court had
> no authority to direct that the sentence for burglary in the third degree
> be served consecutively to the Schoharie County sentences that had

4

> not yet been imposed. That is, the "sentencing discretion afforded by
> Penal Law § 70.25(1) devolves upon the last judge in the sentencing
> chain." Accordingly, the sentence here must be vacated and the matter
> remitted for resentencing.

People v. Clapper, 19 N.Y.S.3d 194, 194 (N.Y. App. Div. 2015) ("Clapper II") (internal footnote and citations omitted).[1] The Third Department also found that Petitioner's ineffective assistance claims were "unpreserved for [its] review due to [Petitioner]'s failure to make an appropriate postallocution motion." Id. (citation omitted). And in any event, the appellate court held that those claims "concern[ed] matters outside of the record on appeal that [would be] more appropriately addressed in the context of a CPL article 440 motion." Id. (citation omitted).

    4. *Resentencing*

Petitioner's resentencing occurred in Schenectady County Court on January 8, 2016. SCR at 201. During the resentencing hearing, the prosecutor argued that Petitioner "st[ood] in the same position [as] he did post-plea," except that he had "now been sentenced in Schoharie County." Id. at 204. Thus, the People argued that a reimposition of "the consecutive sentence as promised to the [Petitioner] originally . . . would be [the] most appropriate" outcome of the hearing. Id. Petitioner disagreed, and asked the court to adjourn the sentencing so that Petitioner could "look into how [the Third Department's decision] will affect his time calculation." Id. at 205.

The court overruled Petitioner's objection, vacated his sentence, and "proceed[ed] with [the re]sentencing." Id. at 206. The People asked the court "to impose the agreed upon sentence" referenced in the plea agreement, and Petitioner's counsel did not object except insofar as to

---

[1] A copy of the Third Department's decision was included in Respondent's submissions. See SCR at 199–200.

5

"adopt all of the statements [she] made regarding the pre-sentence investigation at the time of the first sentence." Id. at 207–08. However, Petitioner personally asked the court what impact its decision would have on his concurrent Schoharie sentences. Id. at 208. The presiding judge acknowledged that as a "good question," id., but eventually found that, because he "d[id]n't exactly know what happened in Schoharie County," he could not speculate as to "the legal ramifications" of the resentencing. Id. at 209. Nonetheless, the court encouraged Petitioner to "pursue whatever appeal rights [he] ha[s]." Id.

The court then sentenced Petitioner in a manner "consistent with the negotiated plea of October 16, 2013," resulting in a sentence of "an indeterminate term of one to three years consecutive to the imposed Schoharie County convictions and sentencings [sic]." Id. at 209–10.

### 5. Petitioner's Second Direct Appeal

On January 14, 2016, Petitioner filed a direct appeal of his resentencing in Schenectady County. Id. at 212–38. In the brief submitted in connection with that appeal, Petitioner argued that (1) the court erred by resentencing Petitioner to a sentence "which was illegal at the time of [his] original sentencing," id. at 219–22; (2) the court violated Penal Law § 70.25 "by failing to impose a sentence which would run concurrent to [Petitioner's] sentence from Schoharie County," id. at 222–23; and (3) the court "abused its discretion by failing to obtain an updated presentence report prior to [Petitioner's] resentencing," id. at 223–24.

On September 14, 2017, the Third Department affirmed Petitioner's sentence, holding that "when a defendant is resentenced while subject to a undischarged prison term, the sentencing court may run the sentences consecutively." People v. Clapper, 59 N.Y.S.3d 719, 720 (N.Y. App.

6

Div. 2017) ("Clapper III") (citing Matter of Murray v. Goord, 801 N.E.2d 165, 167 (N.Y. 2003).[2]

Thus, because Petitioner

> was aware of the terms of the sentences that he was to receive in Schoharie County at the time that he entered his plea in this matter, as well as that the sentence in this matter would run consecutively to them[, t]he agreed-upon sentence was a legal one and . . . Supreme Court did not abuse its discretion by imposing it upon remittal.

Id. (citation omitted). Further, the Third Department found that the resentencing court's failure to update Petitioner's presentence investigation report did not constitute an abuse of discretion because Petitioner "ha[d] been continuously incarcerated since the imposition of the original sentence and was provided an opportunity to address the court prior to resentencing." Id. (citation omitted).

On September 25, 2017, Petitioner filed an application for leave to appeal to the New York State Court of Appeals, SCR at 291, which the People opposed. Id. at 292–93. Petitioner's application was denied by the Court of Appeals on December 13, 2017. People v. Clapper, 94 N.E.3d 491, 491 (N.Y. 2017) ("Clapper IV").[3] No other state-court collateral proceedings appear to have been filed, Answer ¶ 3.

### III. STANDARD OF REVIEW

According to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may not grant habeas corpus relief

---

[2] A copy of the Third Department's decision was included in Respondent's submissions. See SCR at 288–89.

[3] A copy of the Court of Appeals's decision was included in Respondent's submissions. See SCR at 295.

7

> with respect to a claim adjudicated on the merits in state court unless the adjudication of that claim—(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence of the evidence presented in the State court proceeding.

§ 2254(d)(1)–(2). This standard is "'highly deferential'" and "'demands that state-court decisions be given the benefit of the doubt.'" Felkner v. Jackson, 562 U.S. 594, 598 (2011) (per curiam) (quoting Renico v. Lett, 559 U.S. 766, 773 (2010)).

The Supreme Court has explained that "a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with th[e Supreme] Court's precedents.'" Nevada v. Jackson, 569 U.S. 505, 508–09 (2013) (per curiam) (quoting Harrington v. Richter, 562 U.S. 86, 102 (2011)). Additionally, the AEDPA prohibits "using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." Parker v. Matthews, 567 U.S. 37, 38 (2012) (per curiam) (quoting Renico, 559 U.S. at 779). Thus, "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007) (citation omitted).

Federal habeas courts must presume that the state courts' factual findings are correct unless a petitioner rebuts that presumption with "clear and convincing evidence." Id. at 473–74 (quoting § 2254(e)(1)). "A state court decision is based on a clearly erroneous factual determination if the state court 'failed to weigh all of the relevant evidence before making its factual findings.'" Lewis v. Conn. Comm'r of Corr., 790 F.3d 109, 121 (2d Cir. 2015) (quoting

8

Doe v. Menefee, 391 F.3d 147, 164 (2d Cir. 2004)). Finally, "[w]hen a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits." Johnson v. Williams, 568 U.S. 289, 301 (2013).

## IV. DISCUSSION

The Petition raises two arguments in support of Petitioner's request for a writ of habeas corpus. First, Petitioner contends that the Schenectady County sentencing court "erred by changing [P]etitioner's date of conviction and resentencing him to the same sentence which was illegal at the time of [P]etitioner's original sentencing." Pet. at 5.[4] Second, Petitioner argues that he "received ineffective assistance of counsel" because his attorney "never objected or notified [P]etitioner of []his illegal sentencing." Id. at 7.

### A. Validity of Petitioner's Resentencing

According to Petitioner, the Schenectady County court's resentencing decision violated his Fifth and Fourteenth Amendment rights by reinstating a previously-illegal sentence. Pet. at 5. Respondent counters that Petitioner's resentencing argument is (1) non-cognizable, because there is "'no constitutionally cognizable right to concurrent, rather than consecutive, sentences,'" Opp'n at 8 (quoting United States v. McLean, 287 F.3d 127, 136 (2d Cir. 2002)); (2) unexhausted and defaulted, "because he raised it on direct appeal in solely state-law terms," id. at 9; and/or (3) meritless, because "[P]etitioner cannot establish a violation of state law, much less clearly established Supreme Court law," id. at 11.

---

[4] The cited page numbers for that document refer to those generated by the Court's electronic filing system ("ECF").

9

Even when liberally construed, Petitioner's assertion that the court incorrectly imposed a consecutive sentence during his resentencing hearing is inadequate to warrant habeas relief. As Respondent notes in the Opposition, the Second Circuit has held on multiple occasions that "there is 'no constitutionally cognizable right to concurrent, rather than consecutive, sentences.'" McLean, 287 F.3d at 136 (quoting United States v. White, 240 F.3d 127, 135 (2d Cir. 2001)). Accordingly, "[w]hether the sentencing court properly applied New York State Penal Law § 70.25 in determining that [Petitioner's] sentences were consecutive rather than concurrent is not cognizable on federal habeas review." Blume v. Martuscello, No. 1:13-CV-4310, 2016 WL 1070847, at *13 (S.D.N.Y. Mar. 15, 2016).

Petitioner also appears to argue, in his reply to Respondent's opposition papers, that the resentencing "[a]llow[ed] for a back door sentence" and a period of incarceration that was harsh and excessive, ostensibly in violation of his Eighth Amendment rights. Dkt. No. 18 ("Reply") at 1. Despite the Court's warning that it "w[ould] NOT consider any new grounds for relief or other legal theories asserted by [P]etitioner in his []reply," Dkt. No. 17, the Court has nonetheless reviewed Petitioner's argument and finds that it, too, is not cognizable through federal habeas review. Petitioner pled guilty to one count of third degree burglary, a Class D felony offense, which carried a maximum indeterminate term of imprisonment of three to seven years. SCR at 7–8; N.Y. Penal Law § 70.00(1)–(2). "No federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law." White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992); see also Taylor v. Connelly, 18 F. Supp. 3d 242, 268 (E.D.N.Y. 2014) ("An excessive sentence claim may not provide grounds for habeas corpus relief where a petitioner's sentence is within the range prescribed by state law.").

Having found that Petitioner's sentencing arguments are non-cognizable and, therefore, subject to dismissal, the Court need not address Respondent's arguments regarding exhaustion and the merits.

**B. Ineffective Assistance of Counsel**

Petitioner alleges that he received ineffective assistance of counsel because his attorney "never objected or notified [P]etitioner of []his illegal sentencing . . . [and i]nstead allow[ed] the court to impose [an] illegal sentence[]." Pet. at 7. Respondent argues that Petitioner's allegation is both unexhausted—given that Petitioner "never raised it in any form in state court, Opp'n at 12—and "plainly meritless," because the claim is "hopelessly vague and conclusory" and, in any event, did not result in any prejudice, id. at 15–16.

*1. Exhaustion Requirement*

An application for a writ of habeas corpus may not be granted until a petitioner has exhausted all remedies available in state court unless "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant."§ 2254 (b)(1). That exhaustion requirement "'is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings.'" Jimenez v. Walker, 458 F.3d 130, 148–49 (2d Cir. 2006) (quoting Rose v. Lundy, 455 U.S. 509, 518 (1982)).

Exhaustion must be achieved both procedurally and substantively. Procedural exhaustion requires a petitioner to raise all his/her claims in state court to "give[] the state courts a fair opportunity to pass on [them]," before bringing a habeas petition. Id. at 149 (citing O'Sullivan v. Boerckel, 526 U.S. 838, 854 (1999)). Substantive exhaustion, on the other hand, requires a

petitioner to "fairly present" each claim for habeas relief in "each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." Baldwin v. Reese, 541 U.S. 27, 29 (2004) (citations omitted). In other words, a petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan, 526 U.S. at 845.

Here, Petitioner's ineffective assistance of counsel claim has not been exhausted because it was not properly raised in state court. Petitioner did raise an ineffective assistance argument in the pro se supplemental brief he filed before the Third Department during his first direct appeal, but that claim was asserted against the attorney that represented Petitioner early in his criminal proceedings and relates solely to the factual circumstances of those proceedings. See SCR at 117–24. Petitioner's present claim refers instead to his resentencing, and asserts that his resentencing counsel—a different attorney from the one referenced in his pro se supplemental brief—was ineffective as well. Pet. at 7. Thus, Petitioner's present ineffective assistance claim relates to a different attorney and a different set of facts; one which no state court has had the opportunity to address.

2. The Merits

"[N]otwithstanding the failure of [a petitioner] to exhaust the remedies available in the courts of the State," "[a]n application for a writ of habeas corpus may be denied on the merits." § 2254(b)(2). The Court has therefore reviewed Petitioner's ineffective assistance claim on the merits and, for the reasons set forth below, finds that it is subject to immediate dismissal.

12

The prevailing legal standard for constitutional claims of ineffective assistance of counsel was established by the Supreme Court's landmark decision in Strickland v. Washington, 466 U.S. 668 (1984). There, the Supreme Court held that a petitioner bringing an ineffective assistance claim must prove (1) "that counsel's representation fell below an objective standard of reasonableness," id. at 687–88; and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694. That standard "must be applied with scrupulous care," because such a claim "can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial [or in pretrial proceedings]." Harrington v. Richter, 562 U.S. 86, 105 (2011); accord Premo v. Moore, 562 U.S. 115, 122 (2011).

Therefore, as to the first prong, the reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . [and] the [petitioner] must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)); see also Richter, 562 U.S. at 110 ("Strickland does not guarantee perfect representation, only a reasonably competent attorney." (internal quotation marks and citation omitted)). And as to the second prong, the Supreme Court has clarified that "Strickland asks whether it is 'reasonably likely' the result would have been different." Id. at 111. "This does not require a showing that counsel's actions more likely than not altered the outcome," id. at 111–12, but only that a "reasonable probability" of a different result exists, "sufficient to undermine confidence in the outcome," Strickland, 466 U.S. at 694. "The

13

likelihood of a different result must be substantial, not just conceivable." Richter, 562 U.S. at 111–12 (internal quotation marks and citations omitted).

Respondent's opposition materials present two arguments in favor of denying Petitioner's ineffective assistance claim on the merits. First, Respondent contends that "[P]etitioner cannot establish that he was in any way prejudiced by counsel's conduct," since "[t]here is no basis to believe that the sentencing court would have been swayed had counsel objected to the sentence." Second, Respondent argues that "Petitioner's claim that counsel failed to 'object' to the sentence" is meritless because "[t]he Appellate Division [in Clapper III, 59 N.Y.S.3d at 720,] ultimately denied on the merits [P]etitioner's claim that the sentence was illegal." Id. at 16. The Court agrees.[5]

Construed liberally, Petitioner's ineffective assistance claim rests on his counsel's failure, during the January 8, 2016 resentencing hearing, to argue that Petitioner's resentencing would undermine the legality of his Schenectady and/or Schoharie sentence(s). In other words, Petitioner argues that his counsel should have represented to the court that, by reimposing Petitioner's consecutive Schenectady sentence, it would institute a combination of criminal sentences that violated New York law. The Court assumes, without deciding, that Petitioner's counsel's failure to raise this argument "fell below an objective standard of reasonableness." Strickland, 466 U.S. at 687–77.

---

[5] Respondent also raises a third argument, contending that Petitioner's claim—"that counsel never 'notified [P]etitioner of []his illegal sentencing"—should be dismissed because it is "hopelessly vague and conclusory." Opp'n at 15. However, because the Court finds Petitioner's claim deficient on other grounds, it will not address that argument here.

However, even if Petitioner's counsel had prepared and presented an argument like that contemplated above, the outcome of the Schenectady proceedings would not have been affected. The Court knows this because Petitioner—without assistance from his attorney—raised the illegality issue himself during the resentencing hearing. See id. at 208 ("I was just wondering how this is going to affect with my Schoharie because they ran me concurrent."). In reply, the presiding judge said:

> That's a good question . . . but that is a question more appropriately posed to Schoharie County. . . . [E]ven if I knew the immediate answer to your question today I wouldn't have any authority or position regarding what Schoharie County could or couldn't do or whether what they did was appropriate or not. All I know is that our agreement was that I was going to run [your sentence] consecutive to the Schoharie County sentences. If that raises a further issue on appeal regarding these sentences or sentences in Schoharie County, you should pursue those rights. . . . So to answer your question, again, that's a long-winded way of saying I don't exactly know what happened in Schoharie County vis-a-vis sentencing here and I don't know, therefore, what the legal ramifications would be but if you believe what Schoharie County did is inappropriate or legally improper to what I'm doing here today you should pursue whatever appeal rights you have.

Id. at 208–09.

Consistent with those comments, had Petitioner's counsel presented a more fulsome argument to the resentencing court, the best Petitioner could have hoped for was a stay in proceedings to allow the judge to research the "legal ramifications" of the proposed sentence. Id. at 209. None of Petitioner's papers cite to any authority suggesting that his sentence was actually illegal, and the Court is confident that, had he paused to research the issue, Petitioner's resentencing judge would have properly drawn the same conclusion subsequently reached by the

Third Department: that "[t]he agreed-upon sentence was a legal one." Clapper III, 59 N.Y.S.3d at 720 (citing People v. Dozier, 971 N.Y.S.2d 128 (N.Y. App. Div. 2013)).

Accordingly, the Court finds that counsel's failure to raise Petitioner's illegality argument would not have conceivably affected the outcome of his resentencing proceedings. Petitioner's ineffective assistance claim must, therefore, be dismissed.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the Petition (Dkt. No. 1) is **DENIED and DISMISSED in its entirety**; and it is further

**ORDERED**, that no Certificate of Appealability ("COA") shall issue because Petitioner failed to make a "substantial showing of the denial of a constitutional right" as required by 28 U.S.C. § 2253(c)(2); and it is further

**ORDERED**, that any further request for a COA must be addressed to the Court of Appeals directly, in accordance with Rule 22(b) of the Federal Rules of Appellate Procedure; and it is further

**ORDERED**, that the Clerk serve a copy of this Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED: January 14, 2019
Albany, New York

Lawrence E. Kahn
U.S. District Judge